## UNITED STATES v. BESSEN.

District Court, S. D., New York.
Nov. 29, 1941.

Mathias F. Correa, U. S. Atty., for Southern District of New York, of New York City (Thomas McCall, of New York City, of counsel), for plaintiff.

Jasper I. Manning, of New York City, for defendant.

HULBERT, District Judge.

The jury having been waived when this cause came on for trial, and the case having been submitted on an agreed statement of facts supplemented by certain documentary proof, I make the following

### Finding of Fact

1. Some time prior to November 14, 1932, Nathan Bader, Isadore Bader and Julius Pollack were engaged in business as manufacturing furriers in this district under the co-partnership name and style of N. Bader & Company (hereinafter referred to as Bader.

2. On the date stated Bader made, executed and delivered to one Henry Rosen as assignee, a general assignment of assets for the benefit of their creditors, and such assignment was filed in the office of the Clerk of the County of New York, who was also the Clerk of the New York State Supreme Court in and for said county.

On December 15, 1932, while the assignment proceeding was pending in the State Court, Morris Bessen, the defendant in this action, made an offer in writing to Rosen, as assignee, to purchase all of the assets of Bader.

3. The offer of Bessen so far as now material, read as follows: "I agree to pay 42 per cent of the claims of all creditors appearing on the books of the assignor or whose claims may be filed and approved by the Court or approved by the assignor and you, in addition to the payment in full of taxes and claims entitled to priority by law, as well as the payment of all reasonable administration expenses approved by the Court or by the undersigned and you."

4. By order of the State Court dated January 17, 1933, the assignor was authorized to accept the defendant's offer and he transferred the assets of Bader to Bessen, receiving the sum of $7594 in payment thereof.

5. When Bessen made the offer to purchase the assets of Bader, he was informed by the assignee that there was due for taxes $368.29, which amount was included in the sum of $7594.

6. There was due and owing plaintiff by Bader, excise taxes for the month of August, 1932, in the sum of $583.37 plus, interest, and for the month of September, 1932, the sum of $1015.47 plus interest, according to Bader's computation as set forth in reports filed by Bader.

7. Defendant had no actual notice of plaintiff's claim against Bader when he made his offer to purchase Bader's assets.

8. On February 10, 1933, the Collector of Internal Revenue for the First District of New York filed a claim with the assignee for the sums above mentioned aggregating $1598.84 with interest, that being the amount in suit.

9. On October 26, 1933, Rosen delivered his certified check as assignee for $368.29 to the Collector as an offer in compromise in full for the Government's claims together with an offer in compromise verified October 20, 1933, which reads in part, as follows:

"It is understood that this offer does not afford relief from the liability incurred unless and until it is actually accepted by the Commissioner with the advice and consent of the Secretary of the Treasury, and for cases in suit with the recommendation of the Attorney General of the United States, costs, if any, to be paid by the undersigned.

"In making this offer, and as a part of the consideration thereof, the taxpayer hereby expressly agrees that all payments and other credits heretofore made to the account(s) for the year(s) under consideration for which an unpaid liability exists shall be retained by the United States and, in addition, the taxpayer hereby expressly waives—

"1. Any and all claims to refunds or overpayments to which * * * may be entitled under the Internal Revenue laws for any years, calendar or fiscal, or any period fixed by law, expiring prior to the date of the acceptance of the offer, due

through overpayments of any tax, interest or penalty, or interest on overpayments or otherwise, as is not in excess of the difference between the tax liability sought to be compromised herewith and the amount herein offered, and agrees that the United States may retain such refunds or overpayments, if any.

"2. The benefit of any statute of limitations affecting the collection of the liability sought to be compromised, and in the event of the rejection of the offer, expressly consents to the suspension of any statute of limitations affecting the collection of the liability sought to be compromised by the period of time (not to exceed two years) elapsed between the date of the filing of this offer and the date on which final action thereon is taken."

10. The proceeds of that check were deposited in a special account pending the determination of the offer of compromise, which was rejected by the Commissioner of Internal Revenue on October 20, 1939, and this action was commenced on November 21, 1939.

11. Meanwhile on April 27, 1934, an order was made in the State Court proceeding requiring all creditors of Bader to show cause why the assignee should not be discharged and liability under his bond cancelled. Service of notice pursuant to that order was authorized to be made by mail and was so made upon the Collector of Internal Revenue who did not appear on the return day, and an order was entered on May 15, 1934, in the State Court proceeding granting the assignee's application.

Discussion

■ It is argued by the defendant that the contract for the purchase of the assets of Bader was not made for the benefit of the Government and hence it has no claim for which relief can be granted it.

This contention is wholly without merit. In American Equitable Assur. Co. v. Helvering, 2 Cir., 68 F.2d 46 the Court construed a contract wherein the purchaser bound himself "to pay as part of the debts assumed all taxes of the Norwegian Company, Federal, State, or otherwise, if and when determined for all years prior to 1926."

And the Court said (68 F.2d at page 48) : "These taxes were, by the terms of the contract made by the petitioner (the purchaser) with the Norwegian Company, to be paid by the petitioner. The government, as the party to whom the Norwegian Company owed the taxes and the real party they intended to be benefited by this agreement, may enforce the provision" (citing cases).

■ The defendant next contends that when he paid the purchase price for Bader's assets on January 20, 1933, his agreement with the assignee was completely and fully executed; that the statute of limitations as to any claim which the Government might have against him began to run from that date and effectively barred recovery prior to the institution of this action. The statute upon which the defendant relies is set forth in 26 U.S.C.A.Int.Rev.Code, § 3312 (formerly Title 26, Section 1432).[1] This is a six-year statute of limitation. The defendant insists that in submitting the

---

[1] Sec. 3312(d).

Except in the case of income, estate, and gift taxes—"Where the assessment of any tax imposed by this title has been made within the statutory period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court, but only if begun —(1) Within six years after the assessment of the tax, or (2) Prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer."

It is further provided in Title 26 U.S. C.A. Int.Rev.Code.

"Sec. 3670: If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

"Sec. 3671: Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time."

offer in compromise the assignee was without authority to waive any rights of the defendant and extend the period of limitation. But the defendant had no rights to waive. The statute is plainly for the benefit of the taxpayer; whereas the defendant's liability, if any, is contractual and he cannot accept the benefit of any statute whose provisions are not made applicable to him.

■ The next point urged by the defendant is that the contract of purchase and sale was made between parties who were resident of the State of New York to be performed in the State of New York and that the New York State statute of limitations [2] is applicable. It has been held otherwise in United States v. National City Bank, D.C.N.Y., 28 F.Supp. 144.

■ The defendant contends that the Collector of Internal Revenue having appeared in the State Court proceeding and having defaulted upon the presentation of the final account and the judicial settlement thereof, the final order of the State Court discharging the receiver and his bond, is res adjudicata and bars any recovery.

The defendant was not a party to that accounting or that proceeding. There was no adjudication of rights as between the defendant and the Government. It may be that the order of the State Court discharged any claim which the plaintiff may have had against the assignee, although it appears (a) that the Collector had filed a claim for the full amount in suit; (b) that the assignee had made an offer in compromise; (c) that the acceptance of the offer of the compromise was conditional; (d) that the condition had not been complied with; and (e) the assignee had not disclosed these facts to the Court. But the fact remains that the defendant had assumed to pay whatever legal liability existed against Bader for taxes at the time of the offer and purchase and transfer of Bader's assets, and the defendant has never been discharged from or relieved of that duty.

■ Finally, the defendant contends that the Government has been guilty of laches in having delayed the institution of this action because the assignee having been discharged and his bond cancelled, the defendant has lost his recourse against him. This suit was brought within thirty days after the claim was rejected. The defendant had constructive notice of the Government's claim and the proceedings had thereon and by the exercise of reasonable diligence it might be expected he would have learned the true facts. He placed his faith in the assurance of the assignee and that proved to be unreliable. Therefore, I make my

### Conclusion of Law

1. That the plaintiff is entitled to judgment against the defendant for the sum of $1598.84 and interest, together with the costs and disbursements of this action.

Let a judgment be submitted in accordance with these findings.

---

[2] "Civil Practice Act, Sec. 48. Actions to be commenced within six years. * * *

"1. An action upon a contract obligation or liability express or implied, except a judgment or sealed instrument.

"2. An action to recover upon a liability created by statute, except a penalty or forfeiture."